IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
**JASPER DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | CASE NO. |
| ) | |
| BRANDON JOSEPH PEAKE   ) | |

**PLEA AGREEMENT**

The Government and defendant hereby acknowledge the following plea agreement in this case:

**PLEA**

The defendant agrees to plead guilty to **COUNTS ONE, TWO, THREE, FOUR, FIVE, and SIX** of the Information filed in the above numbered and captioned matter, and pay restitution in the amount of $18,698.63 to the victim described herein. In exchange, the United States Attorney, acting on behalf of the Government and through the undersigned Special Assistant United States Attorney, agrees to recommend the disposition specified below, subject to the conditions in paragraphs **VII** and **VIII**.

**TERMS OF THE AGREEMENT**

**I. MAXIMUM PUNISHMENT**

1

Defendant's Initials _BP_

The defendant understands that the maximum statutory punishment that may be imposed for the crime of armed bank robbery, in violation of Title 18, United States Code, Sections 2113(a) and (d), as charged in COUNT ONE, is:

a. Imprisonment for not more than 25 years;

b. A fine of not more than $250,000; or,

c. Both (a and b);

d. Supervised release term of not more than 5 years; and

e. Special Assessment Fee of $100.

The defendant further understands that the maximum statutory punishment that may be imposed for the crime of brandishing a firearm during and in relation to a crime of violence, in violation of Title 18, United States Code, Section 924(c), as charged in COUNT TWO, is:

a. Imprisonment for a CONSECUTIVE TERM of not less than 7 years and not more than LIFE;

b. A fine of not more than $250,000; or,

c. Both (a and b);

d. Supervised release of not more than 5 years; and

e. Special Assessment fee of $100.

The defendant further understands that the maximum statutory punishment

2

Defendant's Initials _____

that may be imposed for the crime of using a telephone to maliciously convey false information concerning an attempt to destroy a building by means of fire or an explosive, in violation of Title 18, United States Code, Section 844(e), as charged in COUNT THREE, is:

    a.    Imprisonment for not more than 10 years;

    e.    A fine of not more than $250,000; or,

    f.    Both (a and b);

    g.    Supervised release term of not more than 3 years; and

    e.    Special Assessment Fee of $100.

The defendant further understands that the maximum statutory punishment that may be imposed for the crime of being a convicted felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1), as charged in COUNTS FOUR, FIVE, and SIX, is:

    a.    Imprisonment for not more than 10 years;

    h.    A fine of not more than $250,000; or,

    i.    Both (a and b);

    j.    Supervised release term of not more than 3 years; and

    e.    Special Assessment Fee of $100.

## II. FACTUAL BASIS FOR PLEA

Defendant's Initials

The Government is prepared to prove, at a minimum, the following facts at the trial of this case:

**Counts One, Two, and Three**

On July 5, 2013, at approximately 3:26 p.m., a white male wearing khaki cargo pants, a black hooded shirt, a mask, and goggles entered the Traders and Farmers Bank located along Curry Highway in Jasper, AL. The man pointed a black firearm, later identified as an H&K .40 caliber pistol, at one of the tellers. He robbed the tellers' stations and then demanded the keys to the vault, forcing the teller and another bank employee to enter the vault with him. He filled a backpack full of money and fled through a back door on foot. The robber stole $56,800 in US currency, including bait bills. Traders and Farmers Bank was insured by the FDIC at the time of the robbery.

The investigation of the robbery by the Walker County Sheriff's Office and the FBI identified the robber as Brandon Joseph Peake. After the robbery, Peake fled the state of Alabama with his girlfriend, Tamra Files. Several witnesses identified Files, stating that they had seen her sitting in a red truck outside the bank and acting as a lookout prior to the robbery. On July 11, 2013, Peake and Files were captured in the Chattanoogan Hotel in Chattanooga, TN.

Defendant's Initials

Further, through a separate investigation, the Walker County Sheriff's office determined that Peake was responsible for two false bomb threats made on July 5 against the Walker Baptist Medical Center and a bridge spanning Highway 69. These threats were made prior to the bank robbery. As a result of the threat, the bomb squad was deployed, the hospital was evacuated, the bridge and a stretch of highway were shut down, and a lengthy search was conducted. No bombs were found either on the bridge or in the hospital.

Following this threat, the Jasper Police Department requested information from TracFone regarding the phone number that had called in the threat to the hospital. Records indicated that the phone had been purchased from a local Dollar General store the previous day. Detective Alfred Handley and Officer Chuck Henderson went to that store and retrieved surveillance video showing the purchase of the phone. Through witnesses and comparison with Peake's booking and driver's license photos, Peake was identified as the purchaser of the TracFone used to call in the bomb threat.

**Counts Four, Five, and Six**

Following the defendant's arrest on July 11, the FBI and local law enforcement obtained and executed a search warrant at Peake's hotel room. As a result of the search, the officers seized a black pistol holster, a pistol magazine

5

Defendant's Initials

loaded with 16 rounds of ammunition, four 9mm rounds, two LG Tracfones, a loaded Beretta 9mm pistol, an AT&T Samsung telephone, an iPhone, assorted receipts, and approximately $38,000 hidden in two purses and a Coach bag.

In the meantime, on or about July 10, Walker County Sheriff's deputy Mark Bell located the firearm used by Peake during the bank robbery. Deputy Bell went to Traders and Farmers bank and proceeded to trace Peake's escape route through the tall grass in the bordering lot. The grass trail led to an old road bed, where Deputy Bell picked up ATV tracks. Witness reports confirm that a man matching Peake's description drove a white ATV near this area around the time of the bank robbery. The FBI investigation also confirmed that Peake had borrowed a white ATV from a neighbor immediately prior to the robbery. Bell followed the tracks into some woods, and after going about thirty feet into the woods, he found an H&K .40 caliber pistol discarded on the ground. ATF Special Agent Alicia Hanne traced this firearm to Brandon Peake, who had purchased it on December 19, 2007.

On July 12, 2013, the Walker County District Attorney's office interviewed a man named Kenton Howard. According to Howard, Peake had called him after the bank robbery about purchasing a Glock 9mm pistol and a Bushmaster .223 caliber semiautomatic rifle. Peake also wanted to purchase a 50-round drum magazine for the Glock and a 100-round drum magazine for the rifle. The two men arranged to

Defendant's Initials

meet in Tupelo, MS, on July 7, at a Beaumont Suites hotel. Howard stated that he met Peake in a hotel room, and Peake purchased the guns for $1,500. He said that Peake paid with seven $100 bills and assorted twenty dollar bills, tens, and fives. Howard added that Peake's girlfriend, Tamra Files, was present during the sale, and it appeared that she had recently been on a shopping spree. During the interview, Howard told the investigator that, two to three months prior to the bank robbery, Peake had told him he intended to rob the Traders and Farmers bank in Curry, AL, using an ATV. Following the sale of the firearms, Howard agreed to deliver them to Peake's mother's residence in Alabama.

As a result of this interview, a search warrant was obtained and executed at Peake's mother's house at 301 Matthews Drive in Jasper, AL. As a result of the search warrant, the Walker County Sheriff's office seized eighteen .40 caliber pistol rounds, an empty box of 9mm ammunition, an empty retail box for Peake's H&K pistol, a 50-round drum magazine fitting a Glock 9mm pistol, a 100-round drum magazine fitting an AR-15 style rifle, an empty retail box matching the Beretta pistol found in Peake's Chattanooga hotel room, and a Bushmaster .223 caliber semiautomatic rifle.

7

Defendant's Initials

At the time of his arrest, the defendant had been convicted of the felony offense Unlawful Possession of a Controlled Substance, on August 13, 2012, in the Circuit Court of Jefferson County, Alabama, in case number CC-2012-0304.

Each firearm was manufactured outside of the State of Alabama and therefore had traveled in interstate commerce. The serial numbers on the firearms had not been obliterated, and they had not been reported stolen.

**The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence. The defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed.**

*[signature]*
BRANDON JOSEPH PEAKE

### III. <u>RECOMMENDED SENTENCE</u>

Subject to the limitations in paragraph **VIII** regarding subsequent conduct and pursuant to Rule 11(c)(1)(B), Fed.R.Crim.P., the government will recommend the following disposition:

    (a)    That the defendant be awarded an appropriate reduction in offense level for acceptance of responsibility;

Defendant's Initials

(b) That the defendant be remanded to the custody of the Bureau of Prisons and incarcerated for a term consistent with the low end of the advisory United States Sentencing Guideline range, as that is determined by the court on the date that the sentence is pronounced;

(c) That following the said term of imprisonment, the defendant be placed on supervised release for a period to be determined by the court, subject to the standard conditions of supervised release as set forth in U.S.S.G § 5D1.3;

(d) That the defendant be required to pay a fine in accordance with the sentencing guidelines, said amount due and owing as of the date sentence is pronounced, with any outstanding balance to be paid in full by the expiration of the term of supervised release;

(e) That the defendant be required to pay restitution as ordered by the court on the date sentence is pronounced in the amount of $18,698.63 to Traders and Farmers Bank, 5329 Curry Highway, Jasper, AL 35053; and

(f) That the defendant pay a special assessment fee of

9

Defendant's Initials

$600, said amount due and owing as of the date sentence is pronounced.

### IV.  WAIVER OF RIGHT TO APPEAL AND POST-CONVICTION RELIEF

In consideration of the recommended disposition of this case, I, BRANDON JOSEPH PEAKE, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the court might impose. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255.

The defendant reserves the right to contest in an appeal or post-conviction proceeding either or both of the following:

    (a)    Any sentence imposed in excess of the applicable statutory maximum sentence(s);

    (b)    Any sentence imposed in excess of the guideline sentencing range determined by the court at the time sentence is imposed; and

10

Defendant's Initials 

( c ) Any claims of ineffective assistance of counsel.

The defendant acknowledges that before giving up these rights, the defendant discussed the Federal Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the government retains its right to appeal where authorized by statute.

I, BRANDON JOSEPH PEAKE, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.

*[signature]*

BRANDON JOSEPH PEAKE

## V. UNITED STATES SENTENCING GUIDELINES

Defendant's counsel has explained to the defendant, that in light of the United States Supreme Court's decision in United States v. Booker, the federal sentencing guidelines are **advisory** in nature. Sentencing is in the court's discretion and is no longer required to be within the guideline range. The defendant agrees that, pursuant to this agreement, the court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range, and defendant

11

Defendant's Initials 

explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## VI. AGREEMENT NOT BINDING ON COURT

The defendant fully and completely understands and agrees that it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the government is **NOT BINDING UPON THE COURT,** and that the Court is not required to accept the government's recommendation. Further, the defendant understands that if the Court does not accept the government's recommendation, the defendant does not have the right to withdraw the guilty plea.

## VII. VOIDING OF AGREEMENT

The defendant understands that should the defendant move the Court to accept the defendant's plea of guilty in accordance with, or pursuant to, the provisions of North Carolina v. Alford, 400 U.S. 25 (1970), or tender a plea of *nolo contendere* to the charges, this agreement will become NULL and VOID. In that event, the Government will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein.

## VIII. SUBSEQUENT CONDUCT

**The defendant understands that should the defendant violate any condition of pretrial release or violate any federal, state, or local law, or should**

12

Defendant's Initials

**the defendant say or do something that is inconsistent with acceptance of responsibility, the United States will no longer be bound by its obligation to make the recommendations set forth in paragraph III of the Agreement, but instead, may make any recommendation deemed appropriate by the United States Attorney in her sole discretion.**

## IX. OTHER DISTRICTS AND JURISDICTIONS

The defendant understands and agrees that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

## X. COLLECTION OF FINANCIAL OBLIGATION

In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to fully disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The defendant also will promptly submit a completed financial statement to the United States Attorney's Office, in a form that it provides and as it directs. The defendant also agrees that the defendant's financial statement and disclosures will be complete, accurate, and truthful. Finally, the defendant expressly authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to

13

Defendant's Initials 

evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

## XI. AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION

As part of the defendant's plea agreement, the defendant admits to the above facts associated with the charges and relevant conduct for any other acts. The defendant understands and agrees that the relevant conduct contained in the factual basis will be used by the Court to determine the defendant's range of punishment under the advisory sentencing guidelines. The defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct. This agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors which may constitute or relate to relevant conduct. Additionally, the defendant agrees to pay restitution in the amount of $18,698.63 to Traders and Farmers Bank, 5329 Curry Highway, Jasper, AL 35053

## XII. TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS

Unless otherwise specified herein, the defendant understands and acknowledges that this agreement does not apply to or in any way limit any pending

Defendant's Initials

or prospective proceedings related to defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

## XIII. **DEFENDANT'S UNDERSTANDING**

I have read and understand the provisions of this agreement consisting of 18 pages. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront,

15

Defendant's Initials

cross-examine, or compel the attendance of witnesses, to present evidence in my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.

**NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here:

I understand that this Plea Agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this Agreement and have signed the signature line below to indicate that I have read, understand, and approve all of the provisions of this Agreement, both individually and as a total binding agreement.

10/14/13
DATE

BRANDON JOSEPH PEAKE
Defendant

16

Defendant's Initials

## XIV. COUNSEL'S ACKNOWLEDGMENT

I have discussed this case with my client in detail and have advised my client of all of my client's rights and all possible defenses. My client has conveyed to me that my client understands this Agreement and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment. I concur in the entry of the plea on the terms and conditions set forth herein.

_10/19/13_
DATE

_[signature]_
DALE JONES, ESQ.
Defendant's Counsel

## XV. <u>GOVERNMENT'S ACKNOWLEDGMENT</u>

I have reviewed this matter and this Agreement and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

JOYCE WHITE VANCE
United States Attorney

10-15-13
DATE

E. WILSON HUNTER
Special Assistant United States Attorney